**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-215** |
| **RAHMEIR HAYS**<br>**a/k/a "Sparx"** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

## I. INTRODUCTION

The United States of America, by its attorneys David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Shayna Gannone, Everett Witherell and Meghan Claiborne Bisio, Assistant United States Attorneys, respectfully files this sentencing memorandum regarding defendant Rahmeir Hayes. Hayes pled guilty to conspiracy to commit murder in aid of racketeering and murder in the course of using and carrying a firearm during and in relation to a crime of violence, arising from his participation in the November 29, 2021 murder of 14-year-old S.J.

After considering the nature and circumstances of the offense, Hayes's history and characteristics, the need for just punishment, deterrence, protection of the public, and the other factors set forth in 18 U.S.C. § 3553(a), the government submits that a substantial sentence within the parties' agreed range of 40 to 50 years' imprisonment is appropriate. That range properly accounts for the extraordinary seriousness of Hayes's conduct while also recognizing his acceptance of responsibility and the parties' agreement that the federal sentence will run concurrently with his existing and any subsequently imposed state sentences.

## II. FACTS OF THE CASE

The defendant agreed with the following facts at his change of plea hearing:

**Count One — Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5)**

Omerta was a local criminal organization, based in the Strawberry Mansion neighborhood of North Philadelphia, specifically in and around the area between 25th and 30th Streets in that neighborhood. Omerta planned and committed criminal activity, including murders, murder for hire, attempted murders, shootings, firearm possession, counterfeiting, money laundering, illegal gambling, obstruction of justice, robbery, drug trafficking, and mail and wire fraud related to COVID-19 relief payments. Omerta existed to enrich its members through murder for hire, gambling, counterfeiting, fraud, robbery, and drug trafficking. Omerta also existed as a means for its members to establish a territory between 25th and 30th Streets in the Strawberry Mansion neighborhood. This territory existed to help Omerta protect its members, its enterprise activities, and to help Omerta members promote their identity and image associated with their territory. Omerta members used social media to promote Omerta's identity and image; to conduct gang meetings; and to organize, plan, and coordinate acts of violence, retaliation, and other criminal activity. Omerta also used music and music videos to enrich themselves; to promote their identity and image; to recruit new members; to promote their violent acts; and to insult rival gangs and gang members.

The purpose of the Omerta enterprise was to enrich its members and associates through criminal activities, including counterfeiting U.S. currency, robbery, theft, drug trafficking, and fraud, and to preserve and protect the power, territory, and profits of the organization through

acts of intimidation, threats, and violence. Omerta members used firearms to protect gang territory, retaliate against rivals, and enforce discipline within the organization.

Omerta members and associates committed and agreed to commit acts involving murder, attempted murder, robbery, counterfeiting, fraud, drug trafficking, and firearms offenses. Omerta members also used social media and music to promote the enterprise's identity, glorify violence, insult rivals, recruit members, and discourage cooperation with law enforcement. Omerta, including its leadership, members, and associates, constituted an enterprise, as that term is defined by Title 18, United States Code, Sections 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

On or about November 29, 2021, in Philadelphia, in the Eastern District of Pennsylvania, defendant Rahmeir Hayes conspired and agreed with other Omerta members to commit the knowing and intentional murder of S.J., who Omerta members believed had disrespected a deceased Omerta member. The murder conspiracy was committed for the purpose of maintaining and increasing Hayes' and others' positions in Omerta, an enterprise engaged in racketeering activity. The intended murder of S.J. violated Pennsylvania law, including Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a).

**Count Two — Murder in the Course of Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(j)(1) and 2**

On November 29, 2021, members of the Philadelphia Police Department responded to a reported shooting near 131 West Wyoming Avenue in Philadelphia. Upon arrival, officers located 14-year-old S.J. suffering from multiple gunshot wounds to his torso. S.J. was

transported to Temple University Hospital, where he was later pronounced dead. Crime Scene Unit personnel processed the scene and recovered substantial ballistic evidence, including fourteen fired .40 caliber cartridge casings and twenty-three fired 9mm cartridge casings. Additional ballistic evidence was recovered from S.J.'s body during the subsequent autopsy.

Investigators quickly learned that the shooting was a coordinated attack. A witness reported observing two vehicles approaching S.J. before multiple armed individuals exited the vehicles and opened fire. As S.J. attempted to flee, he fell to the ground, at which point one of the assailants continued shooting him. The shooters then returned to the vehicles and fled the area.

The witness followed the fleeing vehicles to the 5400 block of North 6th Street, where both vehicles parked outside 5449 North 6th Street. The witness observed multiple individuals exit the vehicles and enter the second-floor residence at that address, later determined to be the home of co-defendant Jahlil Williams.

Philadelphia police responded to that location and detained two individuals, including co-defendant Kyair Garnett, as they exited the residence. Officers secured the premises while seeking a search warrant.

During a search of the residence, officers recovered four handguns from a hallway closet, including a Glock 22 loaded with an extended magazine, a stolen Glock 23, a Glock 19 with an obliterated serial number, and a Taurus G3 9mm handgun. Ballistics testing later established that shell casings recovered from the murder scene were fired from three of the four firearms recovered inside Williams's residence, directly linking those weapons to S.J.'s murder.

DNA and fingerprint evidence further connected the participants to the homicide. Co-defendant Haneef Roberson's DNA was recovered from the steering wheel of one of the vehicles

used in the shooting. Rahmeir Hayes's DNA was recovered from a lighter found inside that same vehicle, and Hayes's fingerprint was recovered from the second vehicle used in the attack. Investigators also recovered Kyair Garnett's DNA from one of the firearms used in the murder.

The government's evidence would include, among other things, witness testimony, physical evidence, firearms evidence, communications evidence, social media evidence, and other evidence establishing Hayes' participation in the Omerta enterprise, the murder conspiracy, the murder of S.J., and the use and carrying of firearms in connection with that murder.

Through the above facts and others, the government would prove beyond a reasonable doubt that defendant Rahmeir Hayes knowingly and willfully joined the conspiracy to murder S.J. in aid of racketeering, and that he used and carried, and aided and abetted the use and carrying of, a firearm during and in relation to a crime of violence, causing the death of S.J.

## III. <u>LEGAL STANDARD</u>

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

For the reasons provided below, the government asks the Court to impose a sentence within the guideline range because it is sufficient but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

## IV. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The Court may impose the following statutory maximum and mandatory minimum sentences:

The maximum sentence for Count One, charging conspiracy to commit murder in aid of racketeering, is a term of imprisonment of 10 years, a term of supervised release of 3 years, a fine of $250,000, and a special assessment of $100. For Count Two, charging murder in the course of using and carrying a firearm during and in relation to a crime of violence, and aiding and abetting, the maximum sentence is life imprisonment, a term of supervised release of 5 years, a fine of $250,000, and a special assessment of $100.

The total permissible statutory maximum sentence is a term of imprisonment of life, a term of supervised release of 5 years, a fine of $500,000, and a special assessment of $200. Forfeiture of all property involved in the offense may also may be ordered.

### B. Sentencing Guidelines Calculation

The presentence report correctly calculated Hayes' guideline range Counts 1 and 2 are grouped for guideline calculation purposes because Count 1 charges a conspiracy and Count 2 charges a substantive act of the conspiracy, pursuant to USSG §3D1.2(b). Count 1 is used to determine the total offense level.

The guideline for a violation of 18 U.S.C. § 1959(a)(5) is USSG §2E1.3. Pursuant to USSG §2E1.3(a)(2), the base offense level is the offense level applicable to the underlying crime or racketeering activity. In this case, the underlying crime is first degree murder which is calculated at USSG §2A1.1.[2] Pursuant to USSG §2A1.1(a)., the base offense level is 43.

The defendant has clearly demonstrated acceptance of responsibility for the offenses. Accordingly, the offense level is decreased by two levels, pursuant to USSG §3E1.1(a). The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level, pursuant to USSG §3E1.1(b).

Defendant Hayes is in Criminal History Category IV. Based upon a total offense level of 40 and a criminal history category of IV, the guideline imprisonment range is **360 months to life**.

## V. GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING

### A. Sentencing Factors

The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and

[2] The victim was killed under circumstances that would constitute first degree murder under 18 U.S.C. § 111. Also, the murder constituted a violation of Pennsylvania law under 18 Pa. C.S. § 2502(a) (first degree murder).

characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

## B. Application

The relevant § 3553(a) factors will be discussed in turn.

### 1. The Nature and Circumstances of the Offense

The nature and circumstances of Hayes's offenses are extraordinarily serious. Hayes knowingly joined with other Omerta members in a conspiracy to murder S.J., a 14-year-old child, because Omerta members believed that S.J. had disrespected a deceased member of the enterprise. The murder was committed for the purpose of maintaining and increasing Hayes's and others' positions within Omerta.

This was not an impulsive act of violence. It was a coordinated attack. On November 29, 2021, two vehicles approached S.J. Multiple armed individuals exited those vehicles and opened fire. S.J. attempted to flee but fell to the ground. Rather than stop, one of the assailants continued shooting him while he lay there. Police recovered fourteen fired .40 caliber cartridge casings and twenty-three fired 9mm cartridge casings from the scene. Three firearms later recovered from the residence of Omerta leader Jahlil Williams were ballistically linked to the murder.

Hayes was not a bystander to this conduct. He has admitted that he knowingly joined the agreement to murder S.J. and that he used and carried, and aided and abetted the use and carrying of, a firearm during and in relation to that crime of violence, causing S.J.'s death. Physical evidence further connected Hayes to the vehicles used in the attack: his DNA was recovered from a lighter inside one vehicle, and his fingerprint was recovered from the other.

The facts are difficult to overstate. A 14-year-old child was hunted down and killed in a coordinated, gang-related shooting in which dozens of rounds were fired. The motive was not self-defense, necessity, or even a spontaneous confrontation. It was retaliation on behalf of a criminal enterprise. The seriousness of that conduct alone warrants a sentence measured in decades.

### 2. The History and Characteristics of the Defendant

Hayes' history and characteristics likewise support a substantial sentence. His involvement with firearms and violence began well before the instant offenses. At age 17, Hayes was adjudicated delinquent for robbery and possession of a firearm by a minor after he displayed a handgun, threatened a victim, and demanded money. That adjudication resulted in placement at St. Gabriel's Hall and later, Summit Academy. While at Summit Academy, Hayes participated in programming that included drug treatment, Victim Awareness, Thinking for a Change, and Gun Violence Prevention classes.

Those interventions did not prevent further violence. In January 2020, while still at Summit Academy, Hayes participated with five others in an assault on another student. The victim was placed in a chokehold and repeatedly struck in the face, requiring hospitalization. Hayes later pled guilty to harassment and disorderly conduct arising from that incident.

His criminal conduct continued into adulthood. In August 2022, Hayes was arrested for unlawfully possessing a firearm despite being prohibited from doing so. He later pled guilty and received a sentence of 11½ to 23 months of imprisonment followed by three years of probation.

More significantly, Hayes was later convicted in Montgomery County of a wide-ranging firearms-trafficking scheme. The investigation established that Hayes worked with multiple straw purchasers who acquired firearms for him to resell to others, including firearms with obliterated serial numbers. Hayes ultimately pled guilty to numerous firearm-transfer offenses, conspiracy, prohibited firearm possession, dealing in proceeds of unlawful activity, and corrupt organizations, and received a sentence of **11 to 24 years' imprisonment**.

That state sentence is significant for another reason. Under the parties' agreement, the sentence imposed in this federal case will run concurrently with Hayes's existing state sentence. Thus, the Montgomery County sentence does not lessen the need for substantial punishment here. To the contrary, because the sentences will overlap, the federal sentence must itself be sufficiently substantial to ensure that Hayes receives meaningful punishment for his participation in the separate and far more serious conduct at issue here, the intentional murder of S.J. The agreed range of 40 to 50 years accomplishes that purpose.

Hayes also presently faces separate state murder and related charges arising from an alleged September 2022 shooting that resulted in the victim's death. Those charges remain pending, and the Government does not rely upon the allegations as established criminal conduct for purposes of sentencing. But the parties' agreement likewise contemplates that any sentence imposed in that matter will run concurrently with the sentence in this case. Again, that concurrency is not a basis for leniency. It reinforces the need for the Court to impose a

substantial sentence here that adequately reflects the independent seriousness of Hayes's federal offenses and ensures that the murder of S.J. receives meaningful punishment in its own right.

**3. The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment**

A substantial sentence within the agreed-upon range is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

There are few offenses more serious than intentional murder. Here, that murder involved a 14-year-old child, was planned and coordinated, involved multiple armed assailants, and was carried out in furtherance of a violent criminal enterprise. S.J. was shot repeatedly and killed because Omerta members believed he had disrespected one of their deceased associates.

The concurrent nature of the parties' agreement makes the length of the federal sentence particularly important. Hayes is already serving a lengthy state sentence for separate firearms-trafficking conduct and faces additional pending state charges. Because the federal sentence will run concurrently with those matters, a sentence at an insufficient level would risk failing to impose meaningful additional punishment for Hayes's role in S.J.'s murder. The agreed range avoids that result. A sentence of 40 to 50 years ensures that this extraordinarily serious federal offense is not effectively subsumed within sentences imposed for separate criminal conduct.

**4. The Need for Adequate Deterrence and Protection of the Public**

The need for both specific and general deterrence is substantial. Hayes had already encountered the juvenile and adult justice systems before the instant offense. He received residential placement, probation, programming addressing violence and firearm use, and criminal sanctions. Yet his conduct escalated rather than abated. His history therefore demonstrates that lesser interventions did not adequately deter him from serious criminal activity.

A lengthy sentence is also necessary to protect the public. Hayes's record repeatedly involves firearms and violence. He displayed a firearm during a robbery as a juvenile, participated in a group assault, unlawfully possessed firearms as an adult, trafficked firearms through straw purchasers, and ultimately participated in a coordinated murder. And because the sentence imposed here will run concurrently with other substantial state sentences, the federal term must be sufficiently long to perform its own deterrent function.

**5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment**

There is no demonstrated need to adjust the sentence in order to provide the defendant with educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.

**6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants**

Considering the § 3553(a) factors as a whole, the Government respectfully submits that a sentence within the parties' agreed range of 40 to 50 years' imprisonment is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

That range reflects the extraordinary seriousness of Hayes's conduct, the intentional murder of a 14-year-old child, his history of escalating firearm-related and violent criminal activity, the need to protect the public, and the substantial need for deterrence.

## VI. CONCLUSION

For these reasons, the government respectfully requests that the Court impose a sentence within the parties' agreed range of 40 to 50 years' imprisonment. That sentence is sufficient but not greater than necessary to reflect the seriousness of Hayes' conduct, promote respect for the

law, provide just punishment, deter future criminal conduct, protect the public, and account for Hayes' role in a violent, organized racketeering enterprise.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/*Everett Witherell*
Everett Witherell
Shayna Gannone
Meghan Claiborne Bisio
Assistant United States Attorneys

Dated: October 13, 2026

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Government's Sentencing Memorandum was served by electronic filing to all counsel of record.

/s/ *Everett Witherell*
Everett Witherell
Assistant United States Attorney

Dated: October 13, 2026